**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| GREGORY THOMPSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Case No.: 1:09-cv-1113-GBL/TRJ** |
| ) | |
| WACKENHUT SERVICES, INC. ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT WACKENHUT SERVICES, INCORPORATED'S
OPPOSITION TO PLAINTIFF'S MOTION
AND MEMORANDUM IN SUPPORT FOR SANCTIONS**

COMES NOW the Defendant, Wackenhut Services, Incorporated ("WSI"), by counsel, and submits its Opposition to Plaintiff's Motion and Memorandum in Support for Sanctions, and in support thereof states as follows:

**I.   INTRODUCTION**

On June 4, 2010, Plaintiff filed a Motion to Compel, seeking production of specific documents listed on Defendant's Privilege Log.[1] [Dkt. # 119]. On June 16, 2010, the Court granted Plaintiff's motion and required WSI to produce the subject documents, with the exception of seven (7) pages, which the Court withheld based on the work product doctrine. [Dkt. # 140]. The Court also subsequently granted Plaintiff's related motion to re-open the deposition of WSI's corporate representative upon receipt of the documents which were the subject of Plaintiff's motion to compel. [Dkt. # 145].

WSI appealed Magistrate Judge Jones's June 16, 2010 Order. On July 21, 2010, Judge Lee overruled WSI's objections to the June 16, 2010 Order. Judge Lee's order was

---

[1] Plaintiff specifically requested that Defendant produce sixteen out of the eighty-one entries from Defendant's Privilege Log, which included approximately thirty one emails and attachments thereto. [Dkt. # 119].

served on the parties via the CMEF electronic filing system on July 23, 2010. On July 26, 2010, in accordance with an agreement previously reached between the parties, WSI produced documents bates stamped WSI Confidential 00311-317, 319-349, 356-378.

On July 28, 2010, Plaintiff re-noticed the deposition of WSI's Rule 30(b)(6) representative. See attached Exhibit A. August 11, 2010 was the date agreed upon by both parties to depose WSI's designated corporate representative Mr. Jeremy Harman.

### A. Report Card

On August 10, 2010, defense counsel met with Jeremy Harman, in preparation for the August 11, 2010 Re-Noticed Rule 30(b)(6) Deposition. See attached Exhibit A. During a review of the documents which were the subject of Plaintiff's notice, it was discovered, for the first time, that WSI's internal incident report referenced a report card.[2] Mr. Harman explained that report cards are generated by WSI's customers as a means to comment upon WSI's performance under the contract. He had not seen and/or reviewed the document since he received it in January, 2008. After becoming aware of its existence, defense counsel, and Mr. Harman obtained a copy to bring to the deposition. Prior to August 10, 2010, defense counsel was unaware that a report card for the December, 2007 timeframe existed.

During the deposition, Plaintiff's counsel questioned Mr. Harman about the report card. He answered questions about it, e.g., its author, the purpose of the report card, the manner in which the report card was transmitted to WSI, to whom the report card was

---

[2] This is the only document in which such a reference can be found. During defense counsel's initial review of the documents it was inadvertently overlooked. See also page 4, below.

distributed, and its contents. See Harman Dep., pp. 48-52, attached as Exhibit B.[3] Plaintiff's counsel then requested a copy of the report card and the final incident report and initially, stated that she would leave the deposition open until those documents were received. See Exhibit B, p. 62, lines 8-14. However, she later changed that posture.

Based on the explicit understanding that Plaintiff would question Mr. Harman about the contents that day and then close the deposition, defense counsel then provided Plaintiff's counsel with the requested documents. See Exhibit B, pp. 65-67, 77. Plaintiff's counsel took time to review the documents, but then reneged and refused to close the deposition. She commented about the length of the incident report and the inability to thoroughly review the five page document as the primary reasons for wanting to leave the testimony open. See Exhibit B, pp. 66-67.

Defense counsel repeatedly offered Plaintiff's counsel unlimited additional time to review the documentation, so counsel could question Mr. Harman on its contents. Notwithstanding their prior agreement, Plaintiff's counsel then refused to take any additional time to do so. See Exhibit B, pp. 67, 75-76. Rather than ending the deposition and leaving it open for potential future questioning, Plaintiff's counsel chose to proceed with the deposition and question Mr. Harman about both the report card and the final incident report, and she did so.

WSI and defense counsel willingly provided Plaintiff with a copy of the report card. As stated earlier, Defendant's only concern prior to doing so was that Plaintiff's counsel agree to conclude the deposition and not leave it open and depose Mr. Harman for a third time in order to question him further about the one paragraph document. See

---

[3] In accordance with Plaintiff's Motion and Memorandum in Support of His Motion to File Exhibits Under Seal [Dkt. # 188], the portions of Mr. Harman's transcript cited herein will be filed under seal with the Court and will be further addressed during oral argument.

3

Exhibit A to Plaintiff's Motion.  During the deposition, Mr. Harman answered all questions pertaining to the report card.  See Exhibit B, pp 48-52, 70-71.  Therefore, Plaintiff was in no way prejudiced by the production of the report card at the August 11th deposition.  Plaintiff's counsel had ample opportunity to review the document and question Mr. Harman about the same, and in fact, did so.

The report card is not, as Plaintiff asserts, adverse to, and does not contradict, Defendant's legal position in this matter.  Defendant's position has always been, and continues to be, that it fulfilled its contractual obligations with respect to treating the Arlington Service Center (ASC) site for snow and ice on December 5-6, 2007.  The report card does not indicate that Defendant failed to do so.  Rather, it questions WSI's response time regarding re-treatment relative to an unspecified event (which is precisely what Mr. Harman testified to).  Therefore, WSI and defense counsel had no reason to intentionally withhold the document.  In any event, they assure the Court and counsel for Plaintiff that they did not do so.  It will offer proof on the subject.

In addition, contrary to Plaintiff's assertions, Mr. Harman did not testify that the document was deliberately not produced.  See Plaintiff's Motion, pg. 2.  Rather, he testified that the report card was not maintained in the area where all of the other documents relating to this incident were kept, and, as a result, even assuming that the document had been the subject of a prior discovery request, it had inadvertently not been included in Defendant's document production.  See Exhibit C to Plaintiff's Motion, p. 61, lines 14-19.  WSI again emphasizes that the report card does not explicitly reference the incident with Plaintiff, which is believed to be the reason why it was not kept and located with other documentation regarding the incident during Defendant's initial review of

Plaintiff's discovery requests and the generation of responses to them. See Exhibit A to Plaintiff's Motion. Further, when asked whether WSI determined that the report card was not relevant to the case, Mr. Harman replied that because of the subjective nature of the report card, it was not included in WSI's final report. See Exhibit C to Plaintiff's Motion, pp. 61-62. Contrary to Plaintiff's assertion, Mr. Harman never testified that he or WSI intentionally made the decision not to produce the report card.

Furthermore, notwithstanding Plaintiff's position, the report card is not responsive to any of Plaintiff's discovery requests. Plaintiff's Motion cites to requests for production ¶¶ 1, 4 and 6 as those which would have covered the report card. See Plaintiff's Motion, pg. 4, see also Exhibit D attached to Plaintiff's Motion. However, requests 4 and 6 specifically request all forms of communication "**created** on or after December 6, 2007, **by any employee of the Defendant**…" See Exhibit D to Plaintiff's Motion (emphasis added). As Mr. Harman testified, the report card was generated by Mr. Charles Lockett, an employee of the Department of the Navy. See Exhibit B, p. 49. Furthermore, request number 1 requested production of the following:

> Any and all documents upon which you relied, or which pertain to any fact mentioned or question asked, in answering any Discovery Request, including those that have been or will be discussed, referenced or relied upon by either party at any deposition in this matter.

See Exhibit D to Plaintiff's Motion. The report card is not responsive to this because it was not included in and did not form the basis of any conclusions in the final draft report. Thus, it was not anticipated that it would have been discussed, referenced or relied upon by WSI during any deposition. Furthermore, since it disagrees with the contents of the document, WSI did not rely on it when responding to Plaintiff's discovery requests.

5

Plaintiff also cites to interrogatory number 6 as contemplating the report card. See Plaintiff's Motion, pg. 4. Interrogatory number 6 requests that WSI "identify each document that was consulted, reviewed or otherwise considered in answering any written or oral discovery requests by the Plaintiff, specifying the particular document(s) consulted in regards to each associated request." See Exhibit D to Plaintiff's Motion. As previously stated, since the report card was not "relied upon" by WSI when answering any discovery request, it was not included in and did not form the basis of any conclusions in its final draft report.

WSI did not intentionally or willfully withhold the report card. Defense counsel also explained, on the record, that the report card had not been discovered until the day before the deposition. See Exhibit C to Plaintiff's Motion, p. 64 lines 10-16. As explained above, the document was not responsive to any of Plaintiff's discovery requests and was, therefore, not included in WSI's discovery responses or included on WSI's privilege log. WSI did not act in bad faith and should not be sanctioned for not producing the report card prior to the deposition.

### B. Last Draft of the Incident Report

As stated earlier, Plaintiff's motion to compel specifically addressed only sixteen entries from Defendant's Privilege Log. See Plaintiff's Motion to Compel, attached as Exhibit C. [Dkt. # 199]. For whatever reason, Plaintiff did not request any communications and/or documentation dated after March 17, 2008. It should be noted that on Defendant's Privilege Log, there are six entries immediately following the March 17, 2008 entry that clearly identify the drafts of WSI's Mishap Report as being attached to the subject email. See Defendant's Privilege Log, dated May 29, 2010, pages 18-20,

attached as Exhibit D. For whatever reason, Plaintiff's counsel chose not to include any of the additional drafts of the mishap report in its motion to compel. Instead, he only requested drafts of the report up to and including those completed by March 17, 2008. The last draft of the mishap report is attached to an email dated April 18, 2008, clearly falling outside that time frame. See Exhibit D, pg. 20.

In addition, one separate entry on Defendant's Privilege Log is specifically described as "drafts of internal mishap report containing factual investigation of Plaintiff's alleged slip-and-fall." See Exhibit D, pg. 14. Plaintiff's counsel did not request production of all drafts of the mishap report as part of its motion to compel. Rather, as stated earlier, only selected specific emails containing specific drafts were included as part of his motion. Plaintiff's counsel, therefore, did not previously request production of the last draft of the internal incident mishap report.[4] Similarly, the order granting Plaintiff's motion to compel did not, as Plaintiff's counsel asserted, order production of all drafts of the safety mishap report. Instead, the Order required WSI to produce only those documents that were the subject of Plaintiff's motion to compel. [Dkts # 133 and 140].

Despite not being the subject of Plaintiff's motion to compel and having no obligation to produce the document, defense counsel agreed to produce the final incident report so Plaintiff could question Mr. Harman about it during the August 11, 2010 deposition. See Exhibit B, pp. 65-67, 77. Again, defense counsel produced the incident report with the Plaintiff's agreement that Mr. Harman would only be questioned about the

---

[4] If Plaintiff was concerned that all of the drafts of the report were not going to be included in the subject of his motion to compel, he could have articulated that in advance, but instead, selectively chose which entries, communications and/or documentation he wanted to include as part of his motion to compel, and now seeks to sanction Defendant for Plaintiff's failure to do so.

contents of the report that day.  Id.  However, after providing Plaintiff's counsel with the final report and in contravention of Plaintiff's counsel's prior agreement to close the deposition after its receipt, Plaintiff's counsel refused to end it, again citing the length of the incident report as the sole reason.  As previously explained, despite defense counsel's offer to stay for as long as necessary so Plaintiff's counsel would have adequate opportunity to review the final incident report and question Mr. Harman about its contents, after agreeing to close the deposition, Plaintiff's counsel thereafter attempted to reverse that position, suddenly insisting that she had to leave at 5 pm.  See Exhibit B, p. 76.  At that point, instead of suspending the deposition to review the documents even further, Plaintiff's counsel nevertheless elected to question Mr. Harman about the final report.  See Exhibit B, pp.71-75.

The final incident report is five pages in length, the fourth page primarily being a diagram that exists in the exact form in all drafts of the previously-produced incident report.  The last page merely has a signature line.  See Exhibit F to Plaintiff's Motion.  Furthermore, it is important to note that Mr. Harman testified that the contents of the final report were included in the various prior draft versions produced weeks earlier the final merely being formatted differently.  See Exhibit B, pp.72-74.   Therefore, Plaintiff's counsel had more than adequate time to review the document during the deposition and question Mr. Harman at that time.  Plaintiff's counsel should not now be able to re-depose Mr. Harman for a third time regarding a document, essentially containing a mere 3 pages of substantive text.

**II.     CONCLUSIONS**

(1)     The report card was not intentionally withheld, WSI did not act in bad faith and should not be sanctioned for not producing the report card prior to the deposition.

(2)     The final draft of the incident report was not previously requested by Plaintiff or compelled by the court, and therefore, WSI did not act in bad faith by not producing it prior to the deposition and should not be sanctioned for any reason in connection therewith.

(3)     There is no discernable prejudice to Plaintiff in producing the report card and the final draft incident report during the deposition, since Plaintiff's counsel had adequate time and opportunity to review the brief documents and question Mr. Harman on the same, and clearly, accomplished the latter.  Even assuming that Plaintiff has been prejudiced by his inability to question Mr. Lockett about the document, which is vigorously contested, Plaintiff certainly has/had ample opportunity to seek leave of court to do so, as he previously did it in a compelling Mr. Harman's second Rule 30(b)(6) deposition.

WHEREFORE, WSI respectfully requests that the Court deny Plaintiff's Motion for Sanctions in its entirety.

Respectfully submitted,

DOMBROFF GILMORE JAQUES & FRENCH

_____/s/_____
Donald C. Weinberg (VSB No. 17378)
Darcy A. Cochran (VSB No. 76608)
1676 International Drive - Penthouse
McLean, Virginia 22102
Telephone (703) 336-8800
Facsimile (703) 336-8750
E-mail: dweinberg@dglitigators.com
COUNSEL FOR DEFENDANT
WACKENHUT SERVICES, INCORPORATED

CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of September, 2010, I will electronically file the foregoing Opposition to Plaintiff's Motion and Memorandum in Support for Sanctions with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Angela Hope France, Esq.
PCT Law Group, LLC
1725 Duke Street
Suite 240
Alexandria, VA 22314
Telephone: 703-881-9141
Facsimile: 703-972-9153
Co-counsel for Plaintiff
Email: afrance@pctlg.com

And I hereby certify that on September 10, 2010, I will mail the document by U.S. mail to the following non-filing user:

Michael D.J. Eisenberg, Esq.
700 12th St. NW, Ste. 700
Washington, DC 20005
Telephone: 202-558-6371
Facsimile: 202-403-3430
Counsel for Plaintiff
Email: michael@eisenberg-lawoffice.com

              _____/s/_____
              Donald C. Weinberg (VSB No. 17378)
              Darcy A. Cochran (VSB No. 76608)
              1676 International Drive - Penthouse
              McLean, Virginia 22102
              Telephone (703) 336-8800
              Facsimile (703) 336-8750
              E-mail: dweinberg@dglitigators.com
              COUNSEL FOR DEFENDANT
              WACKENHUT SERVICES, INCORPORATED