IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| GREGORY THOMPSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.   ) | CASE NO. 1:09-cv-1113-(GBL/TRJ) |
| ) | |
| WACKENHUT SERVICES, INC. ) | |
| ) | |
| Defendant. ) | |
| _____  ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Defendant, Wackenhut Services, Incorporated ("WSI"), by counsel, and moves this court, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, for entry of an Order granting summary judgment in its favor on the grounds that there are no material facts in dispute and WSI is entitled to judgment as a matter of law. In support of its motion, WSI further states as follows:

**PRELIMINARY STATEMENT**

This matter concerns an incident that occurred on December 6, 2007 in Arlington, Virginia, in which Plaintiff fell in a parking area at his place of employment. Plaintiff claims to have been injured in the fall as a result of WSI's negligence in carrying out its contractual duties to provide snow clearing and removal services at the accident site.

Plaintiff's claims are barred by the doctrine of assumption of the risk and by his own contributory negligence in traversing the area where he fell. The undisputed facts demonstrate that Plaintiff was fully aware of the risks of walking in the area where he fell, having observed

those conditions first-hand and traversed the same area at least 3 times immediately prior to the accident. In the minutes prior to the mishap, he had already perceived surface conditions in the parking lot where he fell, considered them to be "treacherous," observed other parties struggling to traverse the area, and had specifically been warned about hazardous walking conditions. Despite his appreciation of known risks, Plaintiff voluntarily assumed the risk of injury, and/or failed to take reasonable precautions to ensure his own safety. Accordingly, well-established Virginia law bars his recovery as a matter of law, and WSI is entitled to summary judgment.

## STATEMENT OF UNDISPUTED FACTS

1. At approximately 7:50 AM on December 6, 2007, Plaintiff fell while walking in an outdoor parking lot between Building 12 and Building T-5 at the Defense Information Systems Agency ("DISA") compound located at 701 S. Courthouse Road, Arlington, VA 22204, where Plaintiff was employed.

2. On the morning of the accident, Plaintiff observed the presence of snow and ice on the ground as he was driving into the DISA compound through the main gate. See Deposition of Gregory Swan Thompson (September 1, 2010) ("Thompson Dep."), attached as Exhibit A, at 55:11 – 56:3, 59:7-10, 62:3-8, 62:21 – 63:3 and Thompson Deposition Exhibit 5, attached as Exhibit B.

3. On the morning of the accident, when Plaintiff drove from the gatehouse to the parking lot, he claims to have perceived that the entire roadway and the parking lot were covered with snow.

    Q.    Okay. So when you drove in from the gatehouse to the parking lot and you drove
          down that roadway, you say the entire roadway was covered with snow?
    A.    That's correct.
    Q.    When you pulled into the parking lot, what was its condition?
    A.    Completely covered. It was untreated. There was a lot of – it was just – it was
          untreated.

Thompson Dep., Exh. A at 71:20 – 72:7.[1]

4. After parking his car in one of the southern parking lots, Plaintiff walked to his workplace in Building T-5.  Thompson Dep., Exh. A at 72:12-18, 74:14 – 76:1 and Exh. B.  He testified that it took longer than usual to walk to Building T-5 because the grounds were "untreated" and "slippery" and "treacherous," and it was very hard to keep his footing, walk and maintain his balance:

<blockquote>

Q.    How long does it take you to walk from the parking lot that you've noted as PL to the entrance of the building that you noted as T-5?
. . .
A.    On an average day?
Q.    Yeah.
A.    Three or four minutes, maybe.  I don't know.
. . .
Q.    Okay.  And on the day in question, did it take you any longer than usual?
A.    Yes.
Q.    And that's because?
A.    It was – the grounds were untreated and it was very hard to walk and maintain my balance.
Q.    When you stepped out of your F150 onto the ground, what did you feel?
A.    It was just **very slippery, treacherous.  It was hard to keep my footing.**
Q.    When you continued walking from the parking lot entrance at T-5, was that the way that it continued to be?
A.    Yes.  Nothing was treated, so it was very difficult to walk.
Q.    So the entire distance that you had to cover to get from the parking lot into T-5 was slippery, untreated and, in your words, treacherous?
A.    That's correct.

</blockquote>

Thompson Dep., Exh. A at 74:15 – 75:13.  [Emphasis added.]  Plaintiff further testified that the grounds were "dangerous" and that he had to be careful how he walked:

<blockquote>

Q.    …So you walked from the parking lot into T-5.  And give me an idea as to how long that took?
A.    I don't remember.
Q.    Was it longer than the average, I think what you said, four or five minutes?

</blockquote>

---

[1] WSI is not waiving its right to dispute the truth of Plaintiff's testimony regarding the surface conditions at the DISA compound on the day of the accident; rather, the testimony is submitted for purposes of this motion to establish Plaintiff's subjective state of mind for purposes of WSI's defense of assumption of risk, and the reasonableness of his behavior for purposes of WSI's defense of contributory negligence.

    A.       Yes, it was.
    Q.       Significantly longer
    A.       Yes, it was.
    Q.       Because?
    A.       Because the grounds were so dangerous. . . .
. . .
    Q.       Am I correct, you knew the ground was slippery and you needed to take extra care?
    A.       When I got out the truck, the grounds had not been treated so I had to carefully watch my footing, watch where I was walking and, therefore, it took me a significant amount of time to get from my truck into my workplace at T-5.

Id. at 77:2-13, 77:19 – 78:4.

5. Plaintiff did not call anyone to complain about the ground conditions upon his arrival at work. Id. at 134:1-17.

**First Round Trip between Buildings T-5 and 12**

6. After entering his office in Building T-5, he immediately spent "a few minutes" at his desk and gathered some papers and notes he needed for a video teleconference to be held in Building 12. He then walked to Building 12 to attend the early morning video conference:

    Q.       When you got into T-5, where did you go?
. . .
    A.       My office is in T-5.
    Q.       Right.
    A.       After I went to my office in T-5, I immediately went to building 12.
    Q.       Did you, when you got into T-5, take off your coat? Did you sit down? Did you do anything first?
    A.       That morning when I got to T-5, I went to my desk and I got what belongings I needed and then I proceeded to building 12.
    Q.       What belongings were they?
    A.       Only thing I took with me when I left T-5 going over to building 12 was pieces of paper.

See id. at 78:19 – 80:18.

> Q. How soon after your parking at the parking lot was it before you left building T-5 en route to building 12 for the first time? Sounds like you walked in and didn't even sit down or take off your coat, and then walked over.
> A. I walked in, got my notes together, probably spent a few minutes at my desk and then went to building 12.

See id. at 95:21 – 97:10. Plaintiff did not specify exactly how long he remained in his office, other than to indicate that it was not an hour or a half an hour, suggesting it was much less:

> Q. Is it correct to say, sir, that it was less than 15 minutes between your parking your car, getting into T-5 and then leaving T-5 . . . ?
> A. I'm not going to say for sure because I don't know. I don't know a time.
> Q. Well, give me a ballpark?
> A. I don't know. I don't –
> Q. It wasn't an hour, was it?
> A. No.
> Q. It wasn't a half an hour?
> A. No.

See id. at 96:21 – 97:10.

7. When Plaintiff arrived at Building 12 to facilitate the video teleconference, there were problems getting a clear communication signal, so he walked back to Building T-5 to check some of his notes and try to remedy the situation. Id. at 80:19 – 82:10. He made at least two trips between Building T-5 and Building 12 in the course of trying to address this communication signal problem. Id. at 82:6 – 83:2.

8. The first trip walking from Building T-5 to Building 12 to attend the meeting took "quite a few minutes" because Plaintiff found it to be "very hazardous" and "very treacherous" to walk, and he concluded on this first of four trips across the parking lot between Buildings T-5 and 12, that the surface conditions there were even "worse" than the condition of the parking lot where he had parked his vehicle:

5

> Q. ...When you walked from T-5 to 12, how long did it take, on the first trip?
> A. It took quite a – it took quite a few minutes.
> Q. Could you give me a ballpark, sir?
> A. No. It was very hazardous and it was very treacherous to walk.
> Q. Was the condition of the parking lot between building T-5 and building 12 the same as the conditions in the parking lot in which you parked?
> A. Actually, those – actually, the conditions between T-5 and building 12 appeared to be worse here than it was down here. And they were just – appeared to be worse.

See id. at 89:6 – 20. See also Exh. B.

9. When Plaintiff left Building 12 for the first time, he encountered a coworker, Laticia Hunter, who advised him to be careful walking, because the weather conditions were treacherous and untreated. As a result of his co-worker's bringing his attention to "treacherous" conditions, Plaintiff used a partially different path from the one he had used before. Thompson Dep., Exh. A at 98:16 -99:15, 116:1-19.

10. The paths that Plaintiff walked on his first round trip between Building T-5 and Building 12 are marked on Exhibit 5. See id. at 90:9-11. His first trip into Building 12 is represented by a turquoise/green line, and his first trip returning to Building T-5 is represented by an orange line. See id. at 102:20 -103:9; see also Exh. B. Where the lines intersect, Plaintiff was walking the same path. Id. The path that he took runs through the middle of the parking lot, and is not on a designated walkway. See Thompson Dep., Exh. A at 103:10-21. See also Plaintiff's Response to Request for Admission Nos. 24 and 25 (admitting that he was not on a designated walkway at the time of the accident), attached as Exhibit C. The door that Plaintiff used to depart from Building T-5 is marked with a green "X." See Thompson Dep., Exh. A at 99:16 -20, 130:6-18; Exh. B.

11. On one of his trips between Building 12 and Building T-5, Plaintiff observed Bobbie Stempfley having trouble maneuvering on a sidewalk, and he assisted her back to

Building 12. He also observed other people having similar troubles during both of his trips between Buildings 12 and T-5. Thompson Dep., Exh. A at 263:2 – 264:21, 297:16 – 303:1.

**Second round trip between Buildings T-5 and 12**

12. After his first round trip between Building T-5 and Building 12, Plaintiff remained at Building T-5 for approximately 15 or 20 minutes, and then left again to walk back to Building 12. See Thompson Dep., Exh. A at 104:4-11, 106:11-19.

13. When he started his third trip between the buildings, Plaintiff left Building T-5 from the same doorway that he used on the previous round trip, which is marked on Exhibit 6 with a green"X." The path of travel that Plaintiff took on his second trip to Building 12 is marked on Exhibit 6 with a peach marker, and <u>is the same path of travel he had followed on his first trip</u>, shown with an orange line. See id. at 111:20-22, 113:8 – 114:21, 130:6-18; Exh. B. See also Thompson Deposition Exhibit 6, attached as Exhibit D.

14. On the return trip back to Building T-5, which is marked on Exh. D in blue, Plaintiff was taking the same path, but fell in the parking lot. See Exh. D. The place where he says he fell is marked on Exh. D with a turquoise circle, and is in the parking area and not on a sidewalk or designated walkway. See id. See also Thompson Dep. at 114:20 – 115:22 , 124:8-11; Deposition of Corporal Douglas Brown (May 25, 2010) at 28:11-18 (Plaintiff fell about 50 yards from either crosswalk), attached as Exhibit E; Deposition of Gerald Lee (May 25, 2010) at 34:1-4 (Plaintiff was found on the ground in a location that was not a designated walkway), attached as Exhibit F; Deposition of Clarise Thompson (July 7, 2010) at 65:2-16 (Plaintiff was not on a sidewalk at the time of his fall), attached

as Exhibit G. Thus, Plaintiff has admitted that he fell during his fourth walking trip across the same area:

> Q. What do you remember, sir?
> A. I remember coming in that morning, coming into T-5, immediately going over to building 12 to bring the system up. I tried to bring the system up and I had difficulties. I went back to T-5 to check some notes.
> Q. That's one roundtrip, right? Okay. Then you had—
> A. Then I went – after I got my notes and looked over a couple things, I looked over my notes and past conferences, I went back to building 12. And it was on that trip that I had got all my deficiencies worked out and it was on my final trip back to T-5, because I was all done, that I had my accident.

Thompson Dep. at 85:1 – 15.

15. It is undisputed that the precipitation ended at 10:30 to 11:00 PM on December 5, 2007, the night before the accident, and that there was no natural melting of ice at the accident site thereafter. See Report of Dr. Elizabeth Austin, attached as Exhibit H. Thus, the conditions Plaintiff encountered during his 3 trips across the parking lot were the substantially same conditions that were present when he fell during trip number 4.[2]

**ARGUMENT**

**I. Summary Judgment Standard**

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Volvo Trademark Holding AB v. Vovospares.com, 703 F. Supp.2d 563 (E.D. Va. 2010). Accord, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party must set forth specific facts showing that

---

[2] Plaintiff has not listed any meteorologist as an expert witness.

there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Only disputes over material facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See id. at 248. Importantly, to defeat summary judgment the non-moving party may not rest upon a "mere scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial. Anderson, *supra* at 252; Collins v. Rumsfeld, 2006 U.S. Dist. LEXIS 74338 (E.D. Va. 2006).

**II. Plaintiff's claims are completely barred under Virginia law because he voluntarily assumed the risk of injury**

Because this matter is in federal court on diversity grounds, the Court must apply the substantive law of the forum state, Virginia. See Brown v. Rose's Stores, 1998 U.S. App. LEXIS 9268 (4th Cir. 1998) (applying Virginia tort law), citing Erie R.R. v. Tompkins, 305 U.S. 64 (1938). Accord, Hatfill v. New York Tire Co., 459 F. Supp.2d 462 (E.D. Va. 2006); MicroStrategy, Inc. v. Business Objects, 369 F. Supp.2d 725, 732 (E.D. Va. 2005).

Assumption of risk is a complete affirmative defense in Virginia, and operates to bar recovery by an injured party where (1) the nature and extent of the risk were fully appreciated and (2) the risk was voluntarily incurred by that party. Nelson v. Great Eastern Resort Mgt., 265 Va. 98, 574 S.E.2d 277 (2003); Landes v. Arehart, 212 Va. 200, 203, 183 S.E.2d 127, 129 (1971). It requires the defendant under a primarily subjective test to show what the plaintiff in fact sees, knows, understands and appreciates. Nelson, *supra*, at 103, 574 S.E.2d at 280. See also Thurmond v. Prince William Prof'l Baseball Club, 265 Va. 59, 66, 574 S.E.2d 246, 251 (2003) (holding that, as a matter of law, plaintiff/spectator at baseball game voluntarily assumed the normal risks of being hit by a ball batted into an unscreened area, where she was familiar with the game of baseball and attendant risks, and conceded that immediately prior to the injury, she had been alert and had observed hitters and batted balls for several innings).

9

The essence of this defense is venturousness, demonstrating that the plaintiff voluntarily incurred the risk and fully appreciated its nature. Buffalo Shook Co. v. Barksdale, 206 Va. 45, 48, 141 S.E.2d 738, 741 (1965). See also High v. Coleman, 215 Va. 7, 205 S.E.2d 408 (1974) (plaintiff assumed the risk of injury as a matter of law by voluntarily placing himself in the path of a falling tree). One has assumed the risk of injury as a matter of law if reasonable minds cannot differ that the plaintiff voluntarily elected to encounter a known risk, with full knowledge of the attendant hazards. Robinson v. Trilambda, Inc., 10 Va. Cir. 137 (1987) (plaintiff who slipped and fell at restaurant assumed the risk of injury as a matter of law, where she was well aware of a long-standing slick condition of Defendant's tile floor, and had skidded on it on prior occasions).

Here, Plaintiff's actions demonstrate a continuous chain of conscious decisions to voluntarily incur the risk of falling, despite repeated opportunities to take into account information regarding the nature of any hazardous conditions that may have existed in the areas where he was choosing to walk. Plaintiff was well aware of the conditions on the ground and knowingly assumed any risk associated with attempting to maneuver in those conditions.

As a threshold matter, Plaintiff testified under oath, that he perceived snow and ice on the ground as soon as he entered the DISA compound. See Statement of Facts ("SOF") ¶¶ 2-3. Plaintiff further testified that after he parked his truck in a DISA parking lot on the morning of the accident, he stepped out of his truck, and immediately felt the ground was "slippery" and "treacherous," requiring him to be careful how he walked. See SOF ¶ 4. He asserted that when he arrived at DISA, the ground was "completely covered." See SOF ¶ 3. Plaintiff, therefore, admits to being aware of the general surface conditions from the moment of his arrival at the DISA complex, and admits to having been aware that conditions made it difficult for him to

walk. See SOF ¶¶ 2-4. When he chose to continue to maneuver in those conditions, while being fully aware that they were "dangerous," he assumed the risk of any injury he might incur. See SOF ¶¶ 2-4.

Despite his awareness of general conditions that he considered "treacherous," Plaintiff left his vehicle and walked from the parking lot to his office in Building T-5, which he claims took longer than usual because of snow and ice. See SOF ¶ 4. Plaintiff did not call anyone to complain about the snow or icy conditions upon his arrival at work. See SOF ¶ 5. Rather, despite awareness of conditions he considered to be "treacherous," Plaintiff proceeded with his scheduled work activities, and chose to walk across the parking area, essentially using the same path each time, rather than a designated walkway, to attend a meeting in Building 12. See SOF ¶¶ 6-7. At this point, Plaintiff had his first of multiple opportunities to directly observe the conditions in the area where he later fell, i.e., on his fourth trip between Buildings T-5 and 12. He testified that his first walk to Building 12 was "hazardous" and even "worse" than the conditions in the parking lot where he had parked his vehicle, which he had already found to be both slippery and treacherous. See SOF ¶¶ 4, 8. Accordingly, there can be no dispute that prior to the accident, Plaintiff was completely aware of the specific risks of traversing the parking area between Buildings T-5 and 12, having observed the conditions firsthand, and determined that they were "hazardous." See id.

Plaintiff was further apprised of the risks because he observed another person, Bobbie Stempfley having trouble in the parking lot, and assisted her in making it safely to Building 12. See SOF ¶ 11. He also observed others having similar difficulty, and was specifically advised by a co-worker, Laticia Hunter, about the treacherous walking conditions. See SOF ¶¶ 9, 11.

11

Although Plaintiff was fully cognizant of the risks of walking in an area that was not a designated walkway (SOF ¶10), and which he admittedly considered to be hazardous (SOF ¶ 8), he nonetheless elected to make repeated trips back and forth between Buildings 12 and T-5, in a continued effort to resolve technological problems with the communications system at the meeting he was attending.  See SOF ¶¶ 7, 14.[3]  It is particularly significant that he traversed almost the identical path each time he crossed the parking lot.  He had, therefore, already been exposed to the specific conditions of the parking lot area where he fell at least three times before the accident.  See SOF ¶ 14.

Because he fully appreciated the nature of the risks involved but nonetheless opted to venture out and walk in specific areas that he had concluded were hazardous, Plaintiff assumed the risk of his injury as a matter of law, and is barred from recovery.

### III. Plaintiff's claims are barred by contributory negligence

In contrast to assumption of risk, contributory negligence involves an objective standard and focuses on the carelessness of the plaintiff.  Contributory negligence is the failure to act as a reasonable person would have acted for his own safety under the circumstances of the case.  See Burlage v. Summerville Sr. Living, Inc., 2008 U.S. Dist. LEXIS 33572, at *15-16 (E.D. Va. April 18, 2008); Moses v. Southwestern Va. Transit Mgt. Co., 273 Va. 672, 678-79, 643 S.E.2d 156 (2007).  Contributory negligence can be disclosed by the plaintiff's own evidence or may be fairly inferred from all the circumstances.  Elkins v. United States, 429 F.2d 297, 299 (4th Cir. 1970; Burlage, *supra* at **15-16; Charlottesville Music Ctr v. McCrayu, 215 Va. 31, 205 S.E.2d 674, 679 91974); Moses, *supra* at 678-79.

---

[3] Even were Plaintiff to claim that his job required him to expose himself to the risk of injury, Virginia has not recognized such an exception to the doctrine of assumption of risk merely because a plaintiff is injured in the course of employment.

Virginia courts have routinely held that a plaintiff is guilty of contributory negligence as a matter of law when the dangerous condition was open and obvious. See Scott v. Lynchburg, 241 Va. 64, 399 S.E.2d 809 (1991); Tate v. Rice, 227 Va. 341, 315 S.E.2d 385 (1984). See also Rocky Mt. Shopping Ctr. Assocs. v. Steagall, 235 Va. 636, 369 S.E.2d 193 (1988) (customer was contributorily negligent when she fell on an obvious depression in the parking lot). This is because open and obvious dangers, including snowy or icy conditions, should be observed by any person in the exercise of ordinary care. See Gall v. Tea Co., 202 Va. 835, 120 S.E.2d 378 (1961); Gottlieb v. Andrus, 200 Va. 114, 104 S.E.2d 743 (1958). See also Wynne v. Spainhour, 215 Va. 16, 205 S.E.2d 634 (1974) (defendant was not required to warn of the presence of open and obvious icy spots after heavy snow storm); Ward v. Clark, 163 Va. 770, 177 S.E. 212 (1934) (plaintiff who was injured walking on ice covered steps was contributorily negligent as a matter of law).

When a person knows of the existence of a condition but, without any reasonable excuse, forgets about the condition and falls in, off, or over it, he is guilty of contributory negligence as a matter of law. Scott, *supra* at 65, 399 S.E.2d at 810 (plaintiff was contributorily negligent as a matter of law, since she knew of the existence of the condition, a curb, that caused her to fall, and had negotiated it on numerous prior occasions). Accord, Hill v. Richmond, 189 Va. 576, 53 S.E.2d 810 (1949). Contributory negligence exists when a plaintiff "had actual knowledge of the existence of a dangerous condition and was injured because of forgetfulness or inattention." Scott, *supra* at 68. Thus, contributory negligence exists when a plaintiff is careless about ensuring his or her own safety, despite having familiarity with a dangerous condition. See, e.g., West v. Portsmouth, 217 Va. 734, 232 S.E.2d 763 (1977) (plaintiff fell on sidewalk that was in bad condition, but with which he was thoroughly familiar); Hillsville v. Nester, 215 Va. 4, 205

S.E.2d 398 (1974) (plaintiff was contributorily negligent as a matter of law where she tripped on an uneven sidewalk that she had walked over that morning and numerous times previously); <u>Robinson v. Trilambda, Inc.</u>, 10 Va. Cir. 137 (Va. Cir. Ct. 1987) (plaintiff was contributorily negligent as a matter of law where she slipped on a restaurant floor that she knew to be slick, since she was aware of the obvious condition, and exposed herself to injury without taking appropriate precautions for her own safety, thereby contributing to her own accident).

Here, reasonable minds could not differ in finding that Plaintiff was contributorily negligent. Plaintiff has admitted that he knew of the ground conditions generally, and that he knew about the specific conditions in the parking area where he fell, since he had traversed the area multiple times before the accident and had concluded that it was hazardous and treacherous.  <u>See</u> SOF ¶¶ 3-4, 8, 14.  By walking again in the same area, failing to exercise due care, and subsequently falling due to known conditions that he had <u>already</u> concluded to be dangerous, Plaintiff failed to act for his own safety as a reasonable person would have acted under the circumstances. Because Plaintiff has admitted he perceived and appreciated the hazardous ground conditions repeatedly before he fell, the danger would have been obvious or patent to any person exercising reasonable care for his own safety.  Plaintiff failed to use ordinary care for his own protection. Accordingly, he was contributorily negligent as a matter of law and is barred from recovery.  <u>See</u> <u>Scott</u>, *supra*.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, WSI respectfully requests that its motion for summary judgment be granted, and for such other relief as the Court deems appropriate.

      WACKENHUT SERVICES, INCORPORATED

      By: Counsel

      DOMBROFF GILMORE JAQUES & FRENCH

      _____/s/_____
      Donald C. Weinberg, Esq. (VSB No. 17378)
      Darcy Cochran (VSB No. 76608)
      1676 International Drive
      Penthouse
      McLean, Virginia 22102
      Telephone (703) 336-8800
      Facsimile (703) 336-8750
      E-mail: dweinberg@dglitigators.com

      COUNSEL FOR DEFENDANT
      WACKENHUT SERVICES, INCORPORATED

CERTIFICATE OF SERVICE

      I hereby certify that on the 24th day of September, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Angela H. France, Esq. (VSB No. 46862)
PCT Law Group, PLLC
1725 Duke Street, Suite 240
Alexandria, Virginia  22314
Telephone: 703.881.9141
Facsimile: 703.972.9153
Email:  afrance@pctlg.com
Co-Counsel for Plaintiff
Sponsor for Michael D.J. Eisenberg's Pro Hac Vice status

And I hereby certify that I will mail the document by U.S. mail to the following non-filing user:

Michael D.J. Eisenberg
700 12th St. NW, Ste. 700
Washington, DC 20005
Telephone: 202-558-6371
Facsimile: 202-403-3430
Email: michael@eisenberg-lawoffice.com
Counsel Pro Hac Vice for Plaintiff

                                                 /s/
                            Donald C. Weinberg (VSB No. 17378)
                            Darcy Cochran (VSB No. 76608)
                            1676 International Drive, Penthouse
                            McLean, Virginia 22102
                            Telephone (703) 336-8800
                            Facsimile (703) 336-8750
                            E-mail: dweinberg@dglitigators.com

                            COUNSEL FOR DEFENDANT
                            WACKENHUT SERVICES, INCORPORATED